UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARINA DISTRICT DEVELOPMENT CO., LLC d/b/a BORGATA HOTEL CASINO & SPA,** | |
| Plaintiff, | **RICO Case Statement** |
| v. | Civil Action No. 1:14-02283 (NLH-AMD) |
| **PHILLIP D. IVEY, JR., GEMACO INC., CHENG YIN SUN, and JANE DOE,** | *Via ECF* |
| Defendants. | |

In response to the Court's RICO Case Order dated August 5 2014, Plaintiff Marina District Development Co., LLC ("Borgata") states as follows:

1. The unlawful conduct alleged is in violation of *18 U.S.C. §1962(a), (b), (c)* and *(d)*.

2. Defendant Phillip D. Ivey, Jr. ("Ivey"). It is alleged that Ivey engaged in an enterprise known as "edge sorting." "Edge sorting" is a complex enterprise in which casino patrons attempt to arrange playing cards in order to gain knowledge of the relative value of the first card of each hand before it is dealt. To conduct the enterprise of "edge sorting," Ivey engaged in acts of fraud to wrongfully induce Borgata into playing Mini Baccarat with him. Ivey, then unlawfully manipulated the playing cards in the games of Mini Baccarat that Ivey played with Borgata in violation of multiple provisions of New Jersey's Casino Control Act, including: *N.J.S.A. § 5:12-100(e)* (which requires "fair odds" and the "attendant circumstances dictated by New Jersey law and regulations that would assure the fairness, integrity and vitality of the casino operation"); *N.J.S.A. § 5:12-113.1* (which makes it a crime to utilize a cheating device in order to obtain an advantage at any game in a licensed casino); *N.J.S.A. § 5:12-115(b)* (which provides that "[i]t shall be unlawful knowingly to use or possess any marked cards"), and *N.J.S.A. § 5:12-115(a)(2)* (which expressly prohibits to "carry on" with or "expose for play" cards that are marked "in any manner"). It is further alleged that some or all of the proceeds of these games were transferred by Ivey via wire transfer in violation of the Federal anti-money laundering statute (*18 U.S.C. 1956(a)*). It is further alleged that the fraudulent acts committed by Ivey involved the use of telephonic and electronic communications in violation of the Federal wire fraud statute (*18 U.S.C. § 1343*).

Defendant Cheng Yin Sun ("Sun"). It is alleged that Sun conspired with Ivey to commit and did commit the unlawful conduct detailed above, and engaged in the unlawful conduct of manipulating the playing cards in the games of Mini Baccarat that Ivey played with Borgata. Sun's conduct violated multiple provisions of New Jersey's Casino Control Act, including: *N.J.S.A. § 5:12-100(e)* (which requires "fair odds" and the

"attendant circumstances dictated by New Jersey law and regulations that would assure the fairness, integrity and vitality of the casino operation"); *N.J.S.A. § 5:12-113.1* (which makes it a crime to utilize a cheating device in order to obtain an advantage at any game in a licensed casino); *N.J.S.A. § 5:12-115(b)* (which provides that"[i]t shall be unlawful knowingly to use or possess any marked cards"), and *N.J.S.A. § 5:12-115(a)(2)* (which expressly prohibits to "carry on" with or "expose for play" cards that are marked "in any manner").

3.   There are no known alleged wrongdoers other than the Defendants listed above.

4.   Borgata is the victimized party.  Borgata was injured by Ivey's and Sun's fraudulent statements, by being fraudulently induced into playing Mini Baccarat with Ivey, by having Ivey and Sun unlawfully manipulate the cards in the Mini Baccarat games played by Ivey, and ultimately by suffering economic loss in the amount $9,626,000.

5.   The pattern of racketeering activity is alleged as follows:

   a.   Predicate Acts:

   (1)  It is alleged that Ivey and Sun engaged in a scheme to defraud Borgata by "edge sorting," that Ivey and Sun knowingly participated in the scheme to defraud Borgata, and that Ivey and Sun used telephonic and electronic communications in furtherance of the scheme.  Specifically, Ivey and Sun used telephonic and electronic communications with each other and Borgata to conspire to, and to make fraudulent statements and fraudulent misrepresentations to Borgata in order to induce Borgata to play Mini Baccarat with Ivey.  These communications violated *18 U.S.C. § 1343*, which prohibits "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce.".  Ivey and Sun also used telephonic and electronic communications to transfer the proceeds of the fraudulent scheme, in further violation of *18 U.S.C. § 1343.*

   (2)  It is alleged that Ivey and Sun transferred some or all of the proceeds of the fraudulent scheme via wire transfer, in violation of *18 U.S.C. §1956(a)(1)(A)(i)*, which provides that "[w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity" shall be in violation of the anti-money laundering statute.

   (3)  It is alleged that Ivey and Sun transferred some or all of the proceeds of the fraudulent scheme via wire transfer to Mexico in violation of *18 U.S.C. § 1956(a)(2)(A)*, which prohibits "transport[ing], transmit[ting], or transfer[ring], or attempt[ing] to transport, transmit or transfer a monetary instrument or funds from a place in the United

States to or through a place outside the United States or to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of a specified unlawful activity."

      b.      The predicate acts occurred on or about April 11, 2012, May 3, 2012, July 26, 2012 and October 8, 2012. Ivey and Sun were the participants in the predicate acts. Ivey and Sun used telephonic and electronic communications to fraudulently arrange the specific conditions under which Ivey would play Mini Baccarat with Borgata, including making requests for specific dealers, cards, and shuffling devices on the pretext that Ivey was superstitious, with full knowledge that Ivey and Sun's true motive, intention, and purpose was to unlawfully manipulate the playing cards while playing Mini Baccarat with Borgata. Ivey and Sun then engaged in financial transactions to transfer the proceeds of their unlawful activities, specifically, transferring the proceeds via wire transfer, with the intent to promote their unlawful edge sorting scheme.

      c.      The circumstances constituting fraud or mistake are as follows:

In about April 2012, Ivey, conspiring with Sun, contacted Borgata to arrange a visit during which he intended to play Mini Baccarat for high stakes. Because of his notoriety as a high-stakes gambler, and the amount of money he intended to gamble, Ivey was able to make special arrangements to play Mini Baccarat at Borgata. Upon the false pretext of being superstitious, Ivey was provided with a casino dealer who spoke Mandarin Chinese; one 8-deck shoe of purple Gemaco playing cards to be used for the entirety of each session of play, and an automatic card shuffling device to shuffle the cards after each shoe was dealt. In addition, Ivey was permitted to have Sun sitting at the table while he played. Ivey, still conspiring with Sun, engaged in similar acts of fraud and made identical arrangements to play prior to his visits to Borgata on May 3, 2012, July 26, 2012 and October 8, 2012.

Ivey's and Sun's true motive, intention, and purpose in making these playing arrangements was to create a situation in which Ivey and Sun could unlawfully manipulate the playing cards in order to gain an unfair advantage over Borgata. Ivey and Sun wanted a Mandarin speaking dealer because Sun gave instructions to the dealer in Mandarin on how to flip over and lay the cards out on the table, an integral part of the scheme. Ivey and Sun did not want any casino employees to understand the directions the dealers were being given. Ivey and Sun wanted purple Gemaco playing cards because they knew the cards were not cut symmetrically, allowing Ivey and Sun to arrange the cards in such a way that they would have knowledge of the relative value of the first card before it was dealt and could bet accordingly. Ivey and Sun wanted an automatic shuffling device because they knew the device would not change the orientation of the edges of the cards and because they knew it would lend the appearance of propriety to the game when, in fact, the opposite was intended. Ivey and Sun wanted to re-use the same cards because the process of "edge sorting" was time consuming and, once the cards were sorted, they did not want to have to start over with new cards. Ivey and Sun wanted Sun at the table because she actively participated in the unlawful manipulation and identification of the playing cards.

        d.      There has not been a criminal conviction for violation of the predicate acts.

        e.      Civil litigation has not yet resulted in judgment regarding the predicate acts.

        f.      A pattern of racketeering activity requires at least two predicate acts, and Borgata has alleged at least three separate species of predicate acts. While two isolated predicate acts do not necessarily constitute a pattern of racketeering activity, where the conduct is continuous, repeated, and related to the racketeering activity, a pattern is established. It is alleged that Ivey and Sun continuously and repeatedly engaged in acts of wire fraud and violations of the anti-money laundering statute as part of their scheme to defraud Borgata. These were not isolated events, but interrelated because they had the same purpose, results, participants, victim, and method of commission. Moreover, the alleged conduct was continuous, ending only when Borgata discovered the fraudulent scheme.

        g.      The alleged predicate acts do relate to each other as part of a common plan, as described in detail, above. Ivey and Sun engaged in the same pattern of unlawful conduct each time they played Mini Baccarat at Borgata.

6.      An "enterprise" existed between Ivey and Sun within the meaning of *18 U.S.C. §1961(4)*, because Ivey and Sun constituted "a group of individuals associated in fact although not a legal entity."

        a.      Ivey and Sun are the individuals in the enterprise.

        b.      The purpose, function, and course of conduct of the enterprise was to wrongfully obtain, by fraud and fraudulent misrepresentation, purported gambling proceeds from Borgata and then to transfer the proceeds of the fraudulent edge sorting scheme by means of wire communications in interstate or foreign commerce, as well as transfer the unlawful proceeds via financial transactions, with the intent to promote the carrying on of the fraudulent edge sorting scheme.

        c.      There are no employees, officers or directors of the enterprise.

        d.      The enterprise consists of Ivey and Sun.

        e.      Defendants Ivey and Sun are the enterprise itself.

        f.      Defendants Ivey and Sun are the perpetrators of the racketeering activity.

7.      The pattern of racketeering activity and the enterprise have merged into one entity.

8.    The alleged relationship between the activities of the enterprise and the pattern of racketeering activity is that they are one and the same.  The only activity engaged in by the enterprise was the pattern of racketeering activity.

9.    The benefit that the alleged enterprise received from the pattern of racketeering activity was $9,626,000 in purported gambling "winnings."

10.    The activities of the enterprise clearly affected interstate and foreign commerce.  Borgata engages in interstate commerce by attracting patrons from all over the United States and the world, by employing individuals who engage in interstate commerce, and by making purchases of goods and services throughout the United States and the world.  Thus, the proceeds of Defendants' alleged racketeering activity are derived from, and an integral part of, interstate commerce.  Moreover, Defendants transferred the proceeds of the alleged racketeering activity via interstate and international wire transfers.  Finally, the large amount of the proceeds of the alleged racketeering activity, in and of itself, is significant enough to affect interstate commerce, whether transferred domestically or internationally.

11.    a.    Ivey and Sun received the income derived from the pattern of racketeering activity and used this income to further their enterprise.

      b.    Upon information and belief, Ivey and Sun used part or all of the proceeds derived from racketeering activity to perpetuate the enterprise.  Borgata does not have the knowledge or information sufficient to form a belief as to what Ivey and Sun did with any proceeds not reinvested in the enterprise.

12.    Ivey and Sun maintained control of the enterprise at all times, were the only members of the enterprise, and were the only participants in the racketeering activity.  It is alleged that Ivey and Sun used some or all of the proceeds of the racketeering activity to continue the enterprise, thus maintaining control thereof.

13.    a.    Defendants Ivey and Sun are the persons associated with the enterprise.

      b.    Defendants Ivey and sun are both the liable "persons" and the "enterprise under *18 U.S.C. §1962*(c).

14.    Ivey and Sun engaged in a conspiracy to perpetrate the fraudulent "edge sorting" scheme, as set forth in detail above.

15.    The injury to Borgata was the loss of $9,626,000 in purported gambling "winnings" by Ivey and Sun.

16.    The purported gambling "winnings" by Ivey and Sun were produced specifically and directly from the acts that form the pattern of racketeering activity alleged.  Had Ivey and Sun not engaged in wire fraud, they would not have been able to manipulate the

playing cards; had they not violated the anti-money laundering statute, they would not have been able to bank the proceeds of their unlawful activity.

17. The damages sustained are $9,626,000 in purported gambling "winnings" by Ivey and Sun, and Ivey and Sun are jointly and severally liable for the entire amount.

18. There are no other Federal causes of action.

19. Pendent state claims include: (1) breach of contract; (2) breach of implied contract; (3) breach of implied covenant of good faith and fair dealing; (4) fraudulent inducement; (5) rescission based on unilateral mistake; (6) fraud; (7) rescission based on illegality of purpose; (8) unjust enrichment; (9) conversion; (10) civil conspiracy; and (11) participation in a RICO enterprise in violation of *N.J.S.A. 2C:41-1 et seq.*

Dated: Hackensack, NJ
September 4, 2014

Respectfully Submitted,

s/Jeremy Klausner
Agostino & Associates, P.C.
*Attorneys for Plaintiff*
14 Washington Place
Hackensack, NJ 07601
(201) 488-5400
jklausner@agostinolaw.com